IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA


3039 B STREET ASSOCIATES,      :      CIVIL ACTION
INC., et al.,                  :      NO. 09-1079
                               :
          Plaintiffs,          :
                               :
     v.                        :
                               :
LEXINGTON INSURANCE COMPANY,   :
                               :
          Defendant.           :


M E M O R A N D U M


EDUARDO C. ROBRENO, J.                          May 3, 2010


          Before the Court is Defendant's motion for summary

judgment as to Plaintiffs' bad faith insurance claims (doc. no.

33), Plaintiffs' responses (doc. nos. 40, 48, 50), Defendant's

Omnibus Reply (doc. no. 61); and Plaintiffs' Omnibus Sur-Reply

(doc. no. 62).  For the reasons set forth below, Defendant's

motion for summary judgment will be granted.


I.   **BACKGROUND**

          On February 17, 2009, Plaintiffs 3039 B Street

Associates, Inc. and Gianni Bignetti ("Plaintiffs") initiated

this action against Defendant Lexington Insurance Company

("Defendant"),[1] alleging breach of contract and bad faith claims

_____

          [1]    Plaintiffs initiated this action in the Court of Common
Pleas of Philadelphia, which Defendant removed to this Court.
Plaintiffs are Pennsylvania citizens and Defendant is a citizen

based on Defendant's refusal to pay for damages sustained when a frozen sprinkler pipe burst at Plaintiffs' place of business, causing a flood. Defendant has since paid the undisputed flooding damages. Only Plaintiffs' bad faith claims and request for punitive relief remain.[2]

On May 21, 2009, the Court, after applying Pennsylvania choice of law rules, denied Defendant's motion to compel appraisal and to dismiss/stay litigation. There, the Court determined that, under both Pennsylvania and New York law, where an insurance policy breach has been alleged, appraisal is pre-

---

of New York. Therefore, this Court has diversity jurisdiction pursuant to 28 U.S.C. § 1332.

[2] On March 26, 2009, Plaintiffs filed their first motion for partial summary judgment as to the issue of Defendant's liability to cover damages under the insurance contract. Defendant's response demonstrated that multiple genuine issues of material fact existed. See Def.'s Resp.

On April 29, 2009, pursuant to the IPTC, Defendant filed a motion to compel appraisal and to dismiss/stay litigation. Defendants raised a choice of law argument, contending that New York law governs this insurance policy dispute, whereas Plaintiffs opposed, advocating application of Pennsylvania law.

On May 21, 2009, this Court denied Plaintiffs' motion for partial summary judgment as inappropriate where, after a thorough review of the parties' submissions and a hearing on the merits of Plaintiffs' motion, genuine issues of material fact existed, including, but not limited to: (1) whether Plaintiffs breached the terms of the policy by failing to maintain heat on the premises, (2) whether Plaintiff Bignetti actually owned the personal property, which he alleges was damaged in the flood, (3) whether Plaintiff Bignetti is an insured under the terms of the policy, and (4) how much of the damage, if any, was pre-existing.

mature "prior to the admission of liability."[3]

On August 14, 2009, Defendant filed a motion for summary judgment, now pending before the Court. Therein, Defendant requests that Plaintiffs' bad faith claims and the additional cause for relief in the form of punitive damages be dismissed.[4] Defendant avers that its investigation of Plaintiffs' claim was proper and reasonable, Plaintiffs were paid the undisputed amount, and pursuant to the appraisal provision, the parties agreed to resolve continuing damages disputes through appraisal, which have since been paid. Further, Defendant contends that Plaintiffs cannot prove their remaining bad faith claims under either New York or Pennsylvania law.

On August 27, 2009, Plaintiffs filed a first amended complaint alleging three counts under Pennsylvania law: (1) the Appraisal, wherein parties will make additional submissions to this Court should differences in valuation exist regarding the balance of damages; (2) the 3039 Bad Faith Action; and (3) the

---

[3]    See Ice City, Inc. v. Ins. Co. of N. Am., 314 A.2d 236, 240 (Pa. 1974) (holding appraisal clause enforceable where "the conditions precedent to appraisal are satisfied, i.e. the admission of liability but a dispute only as to the dollar value of the loss"); Kester v. State Farm Fire and Cas. Co., 726 F. Supp. 1015, 1017 (E.D. Pa. 1989) ("In order to invoke the appraisal provision of a policy, the insurer must admit liability and there must be a dispute only as to the amount of loss" (relying on Ice City)).

[4]    Plaintiffs have since withdrawn a request for punitive damages after conceding that the relief sought is inapplicable to commercial property policies, as is the case here (doc. no. 36).

Pignetti Bad Faith Action.

On September 19, 2009, Plaintiffs filed a supplemental response in opposition to Defendant's cross-motion for summary judgment and an amended motion to modify the scheduling order. Therein, Plaintiffs, assuming Pennsylvania law controls, provided statutory and case law in support of their bad faith claims.

Following a hearing before the Court, on November 23, 2009, Defendant filed its omnibus reply and, on December 8, 2009, Plaintiffs filed their omnibus sur-reply. Defendant's motion for summary judgment is now ripe for adjudication.[5]

## II. <u>LEGAL STANDARD</u>

Summary judgment is appropriate if there are no genuine

---

[5] As an initial matter, Defendant argues that Plaintiffs did not file a timely response opposing its motion for summary judgment, instead filing a motion to continue so that their Rule 30(b)(6) bad faith witness could be deposed. Defendant contends that since Plaintiffs' motions were allegedly untimely, the Court should not consider any of their responses pursuant to Fed. R. Civ. P. 56(f) (providing that, where a party opposing a motion does not present facts to justify its opposition, the court may "(1) deny the motion; (2) order a continuance to enable affidavits to be obtained, depositions to be taken, or other discovery to be undertaken; or (3) issue any other just order.").

On November 9, 2009, the Court held a hearing in which the parties averred that the necessary deposition of Plaintiffs' bad faith witness had already been taken. <u>See</u> Court Order, dated 11/9/09, doc. no. 58. Thus, in regards to Defendant's pending motion for summary judgment, the Court ordered that Defendant file an omnibus reply and Plaintiffs file an omnibus sur-reply. <u>Id.</u> As such and pursuant to 56(f), all pleadings submitted will be considered by the Court in its determination of Defendant's motion for summary judgment.

issues of material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).  The "mere existence" of disputed facts will not result in denial of a motion for summary judgment; rather there must be "a genuine issue of material fact."  Am. Eagle Outfitters v. Lyle & Scott Ltd., 584 F.3d 575, 581 (3d Cir. 2009) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-248 (1986)).  A fact is "material" if proof of its existence or non-existence might affect the outcome of the litigation and a dispute is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  Liberty Lobby, 477 U.S. at 248.

"After making all reasonable inferences in the nonmoving party's favor, there is a genuine issue of material fact if a reasonable jury could find for the nonmoving party."  Pignataro v. Port Authority of N.Y. and N.J., 593 F.3d 265, 268 (3d Cir. 2010) (citing Reliance Ins. Co. v. Moessner, 121 F.3d 895, 900 (3d Cir. 1997)).  While the moving party bears the initial burden of showing the absence of a genuine issue of material fact, the non-moving party "may not rely merely on allegations or denials in its own pleading; rather its response must-by affidavits or as otherwise provided in [Rule 56]-set out specific facts showing a genuine issue for trial."  Fed. R. Civ. P. 56(e)(2).

## III. __CHOICE OF LAW ANALYSIS__

In the case at bar, Defendant argues that the Court should determine that New York law applies to a claim of bad faith concerning an insurance policy issued in New York (the "Policy").  Plaintiff, however, argues Pennsylvania law controls because the Policy was signed by the insureds and the location of the insured real property is in Pennsylvania.  The Court must first determine whether Pennsylvania or New York law applies to this case.

The conflict of laws rules of the forum state apply when a federal court exercises diversity jurisdiction.  <u>Kaneff v. Del. Title Loans, Inc.</u>, 587 F.3d 616, 621 (3d Cir. 2009) (internal citations omitted).  Therefore, as this Court sits in Pennsylvania, it will apply Pennsylvania's choice of law rules.

Pennsylvania employs a two-step hybrid framework to choice of law questions.  <u>See</u> <u>Atl. Pier Assocs., LLC v. Boardakan Rest. Partners</u>, 647 F. Supp. 2d 474, 486-87 (E.D. Pa. 2009) (Robreno, J.) (discussing Pennsylvania's approach to conflict of laws issue) (internal citation omitted).  Under the first step of this analysis, the Court must determine whether a real conflict exists between the respective laws.  <u>Hammersmith v. TIG Ins. Co.</u>, 480 F.3d 220, 230 (3d Cir. 2007).  Where a conflict exists, a court must proceed to the second step of the conflict inquiry to determine whether the conflict is "true," "false," or "unprovided

-6-

for." Id. at 230.

    A.    Existence of a Real Conflict

        A real conflict exists only where the application of
each state's substantive law produces a contrary result. Id. If
the same result would ensue under the laws of the forum state and
those of the foreign jurisdiction, then no conflict exists and
the court may avoid the choice of law question altogether. Id.;
see Berg Chilling Sys., Inc. v. Hull Corp., 435 F.3d 455, 462 (3d
Cir. 2006) (finding that where applying the laws of both
jurisdictions would produce an identical result, a court should
not engage in a choice of law analysis) (citing Williams v.
Stone, 109 F.3d 890, 893 (3d Cir. 1997)).

        Defendant (the insurer) contends the Court should apply
New York law to a claim of bad faith concerning an insurance
policy issued in New York, even though the Policy covers property
in Pennsylvania.[6] In opposition, Plaintiffs (the insureds)

_____

        [6]    As the Policy did not contain a conflict of laws
provision, Defendant argues that New York law applies because (1)
the Policy was issued to a New York corporation, HWI Global
Properties, (2) the Policy was mailed to HWI's New York address,
(3) the Policy was underwritten by Defendant in New York, (4) the
Property Loss Notice Plaintiffs mailed Defendant identifies a New
York broker (with a New York address), and (5) the parties never
contemplated that Pennsylvania law would control disputes arising
from the Policy as it was negotiated and issued in New York. See
Def.'s Mot. Summ. J. 12-13 (noting that the Policy covered
"corporate entities and properties located throughout the U.S.,
so the parties never" manifested the expectation that
Pennsylvania law would apply). Defendant argues that the
contacts with Pennsylvania are negligible even though Plaintiffs
are residents thereof. Id.

dispute the location of insurance issuance and argue that,
although the Policy was signed and dated in New York, a certified
copy of the Policy was mailed to them in Philadelphia, therefore
the Policy was issued in Philadelphia.  Furthermore, based on the
place the contract was received and situs of the insureds and
property, Plaintiffs aver Pennsylvania law controls.[7]

New York law does not recognize the tort of bad faith
denial of insurance coverage.  See Core-Mark Int'l Corp. v.
Commonwealth Ins. Co., 2005 U.S. Dist. LEXIS 14312, at *9
(S.D.N.Y. July 19, 2005) (citing Polidoro v. Chubb Corp., 354 F.
Supp. 2d 349, 352 (S.D.N.Y. 2005) ("Plaintiff's claim for
bad-faith conduct in handling insurance claims is not
legally-cognizable under New York law.")); US Alliance Fed.
Credit Union v. CUMIS Ins. Soc'y, Inc., 346 F. Supp. 2d 468, 470
(S.D.N.Y. 2004) ("Plaintiff's claim for bad faith denial of

_____

In the alternative, under Pennsylvania law, Defendant
argues that Plaintiffs' claims cannot be meritorious because the
Defendant undertook a reasonable investigation of Plaintiffs'
claims.

[7]     Plaintiffs, however, argue that because the Policy was
delivered in Philadelphia and the location of the insureds is
Pennsylvania, Pennsylvania law controls.  See Pls.' Resp., doc
no. 40.  Plaintiffs contend that the fact that HWI Global
Properties, Inc., the policyholder, is located in New York is not
relevant.  See id. (explaining that HWI is the named insured in
the Policy and is the master for a buying groups, but does not
have ownership over the insured properties.  Whereas, Plaintiffs
are the specific insured and, for all purposes, are domiciled
under Pennsylvania laws (which was known by Defendant upon
issuance of the Policy)).

-8-

coverage is crafted as an independent cause of action in its complaint but, as the Defendant correctly points out, an independent tort action for bad faith denial of insurance coverage is not recognized in New York."); Cont'l Info. Sys. Corp. v. Fed. Ins. Co., 2003 U.S. Dist. LEXIS 682, at *3 (S.D.N.Y. Jan. 17, 2003)).

Pennsylvania law, however, provides a private cause of action for bad faith insurance disputes under 42 Pa. C.S. § 8371. Section 8371 provides a private plaintiff with remedies "if the court finds that the insurer has acted in bad faith toward the insured." 42 Pa. C.S. § 8371.

Therefore, where New York does not recognize a bad faith insurance claim and Pennsylvania law does, a real conflict exists. The Court must next determine whether the conflict is classified as true, false or unprovided for.

B. Classification of the Conflict

A "true" conflict exists where both states have a cognizable interest in applying their own law. Hammersmith, 480 F.3d at 230. A "false" conflict exists when only one state has an actual interest in applying its law. Id. The situation is "unprovided for" when neither state has an interest in applying its own law. Id. at n.9. Where a false conflict or "unprovided for" situation exists, the Court's inquiry is at an end and the law of the forum applies. It is only necessary to proceed to a

"deeper" choice of law analysis where a true conflict exists, i.e., the interests of <u>both</u> of the respective states would be impaired by application of the other's law.  <u>Id.</u> at 230 (citing <u>Cipolla v. Shaposka</u>, 267 A.2d 854, 856 (Pa. 1970) (emphasis in original)).

Here, Pennsylvania has asserted an interest in having its law applied by providing for a private statutory cause of action under § 8371.  Pennsylvania affords its citizens a legal remedy following bad faith insurance disputes.  New York, in failing to recognize bad faith insurance contract disputes and the resulting damages, is at least neutral with regards to application of its own law.[8]  Therefore, where Pennsylvania has an interest in application of its law and New York does not, a "false" conflict arises.  Under these circumstances, the Court will properly apply Pennsylvania substantive law to this case as New York's interests are not injured by application of Pennsylvania law.

---

[8]     Declining to provide bad faith protection to its insured may in fact represent a type of policy choice, i.e., by declining bad faith coverage the New York insurer is afforded protection against bad faith claims.  Ordinarily, however, when dealing with insurance coverage, the choice of one jurisdiction to protect the insured trumps the choice of another jurisdiction to protect the insurer.  This is so, because as "[t]he Third Circuit has made it clear . . . the protection of insured parties is the primary public policy behind laws governing duties owed by an insurer to an insured."  <u>See</u> <u>Gen. Star Nat'l Ins. Co. v. Liberty Mut. Ins. Co.</u>, 960 F.2d 377, 379 (3d Cir. 1992) (finding "that Pennsylvania had little interest in the primary policy because the insured was not a resident of Pennsylvania).

**III. DISCUSSION**

    A.   Applicable Law

        Where Pennsylvania law controls, the Court must determine whether Plaintiffs may bring their claims pursuant to either Pennsylvania's Unfair Insurance Practices Act ("UIPA"), 40 P.S. § 1171.1, or Pennsylvania's statutory "bad faith" standard, 42 Pa. C.S. § 8317.

        1.   UIPA, 40 P.S. § 1171.1

        The UIPA prohibits a person from engaging in an unfair method of competition or an unfair or deceptive act or practice in the insurance business.  40 P.S. §1 171.1.  However, a private party cannot assert a bad faith claim under UIPA as no private right of action exists.  See Atiyeh v. Nat'l Fire Ins. Co. of Hartford, 20008 U.S. Dist. LEXIS 76770 (citing Sabo v. Metro. Life Ins. Comp., 137 F.3d 185, 192 (3d Cir. 1998)).

        Therefore, Plaintiffs have no private right of action for a bad faith claim under UPIA.

        2.   Pennsylvania Statutory "Bad Faith" Standard, 42 Pa. C.S. § 8371

        To establish a claim of bad faith under 42 Pa. C.S. § 8371, Plaintiffs must establish that the insurer (1) lacked a reasonable basis for denying benefits, and (2) knew or recklessly disregarded its lack of a reasonable basis.  Klinger v. State Farm Mut. Auto. Ins. Co., 115 F.2d 230, 233 (3d Cir. 1997); Toy v. Metro. Life Ins. Comp., 928 A.2d 186, 193 (2007).  "In the

insurance context, the term 'bad faith' has acquired a peculiar

and universally acknowledged meaning:

> Insurance. 'Bad faith' on part of insurer is any
> frivolous or unfounded refusal to pay proceeds of a
> policy; it is not necessary that such refusal be
> fraudulent. For purposes of an action against an insurer
> for failure to pay a claim, such conduct imports a
> dishonest purpose and means a breach of a known duty
> (i.e., good faith and fair dealing), through some motive
> of self-interest or ill will; mere negligence or bad
> judgment is not bad faith."

Polselli v. Nationwide Mut. Fire Ins. Co., 23 F.3d 747, 751 (3d

Cir. 1994) (quoting Black's Law Dictionary 139 (6th ed. 1990));

Terletsky v. Prudential Prop. and Cas. Ins. Co., 649 A.2d 680,

688 (Pa. Super. Ct. 1994) ("Mere negligence or bad judgment on

the part of the insurer is not bad faith.") (internal quotation

omitted).  Reckless disregard occurs where "a defendant knows, or

has reason to know, of facts which create a high degree of risk

of physical harm to another, and deliberately proceeds to act in

conscious disregard of, or indifference to that risk."  Polselli,

23 F.3d at 751 (citing Martin v. Johns-Manville Corp., 494 A.2d

1088, 1097 (Pa. 1985)).[9]

"[I]n order to defeat a motion for summary judgment, a

plaintiff must show that a jury could find by 'the stringent

---

[9]    Recklessness, not negligence, can support a bad faith
insurance claim.  See id. at 751 ("For purposes of an action
against an insurer for failure to pay a claim, such conduct
imports a dishonest purpose and means a breach of a known duty
(i.e., good faith and fair dealing), through some motive of
self-interest or ill will . . .").

-12-

level of clear and convincing evidence,' that the insurer lacked
a reasonable basis for its handling of the claim and that it
recklessly disregarded its unreasonableness." Id., 23 F.3d at
750; Kosierowski v. Allstate Ins. Co., 51 F. Supp. 2d 583, 588
(E.D. Pa. 1999) ("[P]laintiff's burden in opposing a summary
judgment motion is commensurately high, because the court must
view the evidence presented in light of the substantive
evidentiary burden at trial.").[10]  The district court must
"examine the evidence to ascertain whether it is so 'clear,
direct, weighty, and convincing' so as to enable the court to
make its decision with 'a clear conviction'." Polselli, 23 F.3d
at 752.

   B.   Analysis

        This case involves a property insurance contract, the
Policy, that insured Plaintiffs' commercial real estate, which
suffered damage from flooding after a sprinkler pipe burst.  The
central issue is whether Defendant engaged in bad faith conduct,
delaying payment on Plaintiffs' claim by conducting a long-term
investigation into whether Plaintiff failed to heat the premises,

---

        [10]   If the Court finds that an insurer acted in bad faith,
any of the following actions may be taken: (1) award interest on
the amount of the claim from the date the claim was made by the
insured in an amount equal to the prime rate of interest plus
three (3) percent; (2) award punitive damages against the
insurer; or (3) assess court costs and attorneys fees against the
insurer.  42 Pa. C.S. § 8371; see F.P. Woll & Co. v. Valiant Ins.
Co., 2004 U.S. Dist. LEXIS 4377, at *13-14 (E.D. Pa. Mar. 10,
2004).

which may have caused or contributed to the pipe burst.

Plaintiffs allege Defendant withheld payment on the Policy (1) for an unreasonable length of time; and (2) for knowingly and recklessly disregarded a reasonable basis to pay after frozen water caused the sprinkler pipe to explode in their commercial real estate property, damaging both the real and personal property. See Pls.' Opp'n to Def.'s Mot. Summ. J. (listing twenty-two facts of record in support of Defendant's alleged failure to timely investigate whether the premises were heated); see also Klinger, 115 F.3d at 233 (noting that § 8371 "does not require a plaintiff to prove that the insurer consciously acted pursuant to such a motive or interest; it is enough if the insurer recklessly disregarded the lack of a reasonable basis in denying benefits.").

In response, Defendant asserts that Plaintiffs cannot prove a successful claim because (1) Defendant's investigation to determine whether Plaintiffs contributed to the loss was "reasonable," (2) Defendant's investigation into the value of Plaintiff's claim upon submission of conflicting evidence and late submitted proof of loss was "reasonable," and (3) any investigatory delay was self-inflicted based on Plaintiff's failure to provide requested documents. See Def.'s Mot. Summ. J. 2.

Under § 8371, the Court must first determine whether

Defendant "lacked a reasonable basis" for delaying a payout to Plaintiffs for damages allegedly covered by the Policy and, if so, whether Defendant "knew or recklessly disregarded" that reasonable basis.

1. Lack of Reasonable Basis in Delaying Payment of Claim

The Policy between Plaintiffs and Defendant laid out the basic adjusting procedure for claims. The Policy stated that, within 30 days of the submitted claims, the insured (Plaintiffs) would submit an "estimate of damages and submit a proof of loss." See Pls.' Sur-Reply 1. After receipt of the proof of loss, the insurer (Defendant) was to make its own estimate, and should there be a difference between the two calculations, an independent appraisal would take place. Id. at 2. The appraisal was slated to take place "within 60 days after receipt of proof of loss by this company [Defendant]." Id. Thereafter, the appraiser would, within 15 days, select a disinterested umpire and, if unable to do so, a judge will select one. Id. Within 15 days therefrom, a disinterested umpire would be chosen and the appraisers would visit the site and make their determination as to damages. Id. If the appraisers disagreed, the determination of damages would be submitted to the umpire. Id. When damages were fully determined, Defendant would pay the award. Id.

To accurately determine whether Defendant was

reasonable in its investigation, an analysis of the relationship between the parties, in chronological order, is useful. This analysis can best be understood by a review of the correspondence between the parties over the relevant time period:

(1)  On January 6, 2008, Plaintiffs discovered that pipes in their commercial building had burst, flooding the basement and damaging both real and personal property. See Pls.' Supp. Resp. Ex. P-26.

(2)  On January 11, 2008, five days after the loss, Mr. Robert H. Thompson ("Thompson"), Defendant's first adjuster, and Mr. Marc Grossman ("Grossman"), Plaintiffs' adjuster, conducted an initial inspection of Plaintiffs' damaged property. See Pls. Sur-Reply P-28 at "2".

(3)  On January 18, 2008, Thompson and Grossman met again to "detail the damage." See Pls.' Supp. Resp. Ex. P-26.

(4)  Throughout February 2008, Plaintiffs worked with a separate adjuster from the policyholder, HMI, to get independent estimates of the damage. See Pls. Sur-Reply P-28 at "2".

(5)  On March 3, 2008, Thompson wrote to Plaintiffs, stating that the submitted documentation regarding the heat fuel for the basement was insufficient because Plaintiffs had sent bills as proof of heat that did not cover the relevant time period. Id. (noting the bills for oil Plaintiffs submitted to Defendant were from one year prior to the loss and months after

the loss).  Therein, Thompson specifically listed twelve questions regarding whether the premises were in fact heated so as to move the claim forward.  See Pls. Sur-Reply P-28 at "2".

(6)  On March 5, 2008, Grossman responded, stating that there were still questions regarding the damaged inventory and whether the premises were heated.  Id. at "4".

(7)  On March 24, 2008, Thompson notified Grossman that Mr. Kyle Cheney ("Cheney"), Defendant's second adjuster, would be taking over as Defendant's adjuster.  Id.  Thereafter, all correspondence over Plaintiffs' claim continued between Grossman and Cheney.

(8)  On April 3, 2008, Grossman wrote to Cheney, stating that an electrician would be reviewing the exterior of the building and to request a $150,000 advance to begin repairs. See id. at "7".

(9)  On April 8, 2008, Cheney informed Grossman that a calculated loss was not stated on the proof of loss form, which was required within thirty days following submission of a claim. See id. at "10, 15".

(10) On April 10, 2008, Cheney sent Plaintiffs a $50,000 advance and stated that Plaintiffs' statement of loss of $681,173.81 was subject to investigation.  See id. at "16".

(11) On April 30, 2008, Grossman wrote Cheney to state that, though it was within Defendant's right to conduct an

ongoing investigation, it would be improper to conduct new estimates of the building ninety days following the loss and that an executed $200,000 proof of loss had already been submitted. That day, Mr. Don Pierro ("Pierro"), Defendant's adjuster, hired as an expert to evaluate damages and estimate losses, evaluated Plaintiffs' damages and estimated the loss at $96,461.69. See id. at "24".

(12) On May 13, 2008, following Pierro's estimation, Cheney submitted its official estimate of the loss, four months after the flood and just over one month from the date Plaintiffs submitted a proof of loss. See Pls.' Sur-Reply 3. That same day, Cheney wrote a letter to Grossman, stating that the investigation was ongoing and that Plaintiffs' submitted proof of loss had been rejected as Plaintiffs failed to file the necessary documentation. See Pls. Sur-Reply P-28 at "46".

(13) In June 2008, Grossman gave Cheney the phone number of Plaintiffs' building manager, Mr. Branch ("Branch"), who was employed by Plaintiffs through an oral contract. See Pls.' Supp. Resp. Ex. P-26b (averring Defendant's first adjuster, Thompson, was notified that Branch was Plaintiffs' premises manager on March 5, 2008, thus the onus was on Defendant to contact Branch in order to properly investigate).

(14) Through the summer of 2008, Cheney continued to request documentation from Grossman regarding heating of the

premises. Id.

(15) In October 2008, Plaintiff Pignetti's deposition was taken regarding submission of the insurance claim. Id.

(16) In December 2008, Mr. Thomas Brown, Defendant's Director, informed Mr. Beiger, Plaintiffs' counsel, that the "final proof of loss" was rejected for discrepancies as to the cause of the flood. See id. Ex. P-28 at "78" (stating that Plaintiffs first claimed flooding was the cause of damage, then claimed "vandalism" was a contributing factor).

(17) On February 17, 2009, Plaintiffs initiated this action. See Pls.' Compl. 1.

In determining whether Defendant had a reasonable basis upon which to continue investigating the claim, Polselli is instructive. 126 F.3d at 530 (finding the defendant insurer acted in bad faith by delaying payment and, ultimately, refusing to pay damages under an insurance policy where it had knowledge the cause of the loss was an accident).

In Polselli, a fire destroyed the plaintiff's home on January 1, 1991. 1992 U.S. Dist. LEXIS 14494 (E.D. Pa. Sept. 23, 1992). The plaintiff filed a proof of loss with the defendant insurer on January 28, 1991, within one month of the fire. Id. at *6. After conducting a two-month investigation in March 1991, the defendant insurer discovered that the fire was caused by accident. Id. at *6. Still, by July 17, 1991, the defendant

insurer refused to advance any money to the plaintiff, even with knowledge that the plaintiff was destitute.  Further, there was proof that the defendant's adjusters, upon investigating the cause of fire and on strict instructions not to touch the property, removed personal property from the scene of the fire. Upon those facts, the district court found, by a preponderance of the evidence, the defendant insurer had acted in bad faith.  Id.

The defendant insurer appealed the ruling to the Third Circuit.  On appeal, the Third Circuit remanded the case finding that a plaintiff must demonstrate bad faith by "clear and convincing evidence."  Polselli, 23 F.3d at 752 (finding that the evidence must be "so 'clear, direct, weighty, and convincing' so as to enable the court to make its decision with 'a clear conviction'").

On remand, the district court reaffirmed its holding, that the defendant insurer had acted in bad faith although this time under the "clear and convincing evidence" standard. Polselli, 1995 U.S. Dist. LEXIS 10173 (E.D. Pa. July 20, 1995), rev'd in part on other grounds.  The district court also identified certain factors a court may refer to in determining whether the delay in insurance policy investigations rose to the level of bad faith.  Id. (noting factors that militate for or against finding bad faith include: (1) "whether Nationwide's [defendant's] delay in responding to communications from Polselli

-20-

[plaintiff], [(2)] its poor response time in engaging an investigator and in conducting the investigation, and [(3)] its handling of settlement negotiations suggested that Nationwide 'did not accord the interest of its insured the same faithful consideration it gives its own interest'") (internal citation omitted).[11]

Applying the factors espoused in Polselli, Plaintiffs' case is distinguishable for the reasons set forth below.[12]

### a. Did Defendant Delay its Communications with Plaintiffs?

From the date of the loss until payment of the claim, Defendant engaged in frequent and regular communications with Plaintiffs. These communications consisted of either requests for specific information needed to adjust and/or estimate the claim or advising Plaintiffs as to the state of the claim. See

_____

[11] Polselli was appealed on the basis of attorney's fees and punitive damages, but it's subsequent history is not relevant to the issues before the Court. See Polselli, 126 F.3d 524 (3d Cir. 1997).

[12] Further, unlike Polselli, this is not a case where the defendant insurer unreasonably withheld payment in its entirety. Here, Plaintiffs' undisputed insurance claims were paid. Plaintiffs, instead, rest their bad faith claims on Defendant's delay in its payment based on a long-term investigation into the heating of the premises. See DeWalt v. Ohio Cas. Ins. Co., 513 F. Supp. 2d 287, 300 (E.D. Pa. 2007) ("Delay that is attributable to the need to investigate further or to simple negligence is not bad faith.") (citing Kosierowski, 51 F. Supp. 2d at 589); see also Klinger 115 F.3d at 234 (holding the insurer acted in bad faith based on delay where the evidence demonstrated the defendant insurer "knew or recklessly disregarded the fact it had no reasonable basis" for delaying the payment of the claim).

<u>supra</u> 16-18 at ¶¶ 5, 6, 9, 10, 12, 14, 15.[13]  In fact, the eighty-seven pages of correspondence between Plaintiffs, Defendant, and their representatives, submitted by Plaintiffs as exhibits in support of their opposition to Defendant's motion for summary judgment demonstrate that the parties were in close communication from the date they submitted their claim.  <u>See</u> Pls.' Opp'n Ex. P-28.

### b.  <u>Did Defendant Have a Poor Response Time Investigation Plaintiffs' Claims?</u>

Defendant retained an initial adjuster, who conducted an initial inspection on January 11, 2008, only five days after the loss occurred.  Defendant's adjuster and Plaintiffs' adjuster met to "detail the damages," eight days later.  When the initial adjuster assigned to the claim was replaced, Plaintiffs were properly notified.  The new adjuster hired an expert who provided an estimate of the loss by April 30, 2010, eighty days after the day of the loss.  <u>See</u> <u>supra</u> 16-18 at ¶¶ 2, 3, 7, 11.

### c.  <u>Settlement Negotiations</u>

During the investigatory process, the parties agree that no settlement discussions occurred <u>inter</u> <u>se</u>.  However, Defendant's prompt response to Plaintiffs' request for an advance undermines Plaintiffs' claim of bad faith on the part of Defendant.  In April 2008, Plaintiffs requested a $150,000

---

[13]  Each paragraph number corresponds to the numbered fact listed on pages 16-19.  <u>See</u> <u>supra</u>.

advance on the claim. Eight days later, while the investigation was still at an early stage, Defendant advanced Plaintiffs $50,000 on account of the claim. See supra 17 at ¶¶ 8, 10.

        d.   <u>Failure to Provide Timely Information of Proof of Loss</u>

Not listed as a <u>Polselli</u> factor, but relevant in this case, is Plaintiffs' failure to fully provide Defendant with information material to satisfaction of their claim.

Here, Plaintiffs did not file a proof of loss within the thirty days following the submission of their claim on January 6, 2008. See Def.'s Mot. Summ. J. 17, Ex. 5, Cheney Aff., dated 4/8/09 (testifying that Plaintiffs failed to submit timely proof of loss and Plaintiffs' adjuster failed to provide documentation after three separate requests were made as to whether premises were heated). In fact, Plaintiffs did not file a sworn proof of loss until April 3, 2008. See id. 19 (noting that Plaintiffs proof of loss estimated $671,173.81 in damages). In response, on May 13, 2008, Cheney, Defendant's new adjuster, submitted the official estimate of the loss, just over one month from the date Plaintiffs submitted a proof of loss and four months after Plaintiffs first submitted their claim. See Pls.' Sur-Reply 3.

Further, despite attempts by Defendant to obtain necessary documentation confirming that the premises were heated, Plaintiffs either failed to provide the requisite information or

provided deficient and/or conflicting documentation.  See Pls.'
Opp'n Ex. P-28 at "4", Pls.' Ltr to Thompson, dated 3/24/08
(identifying that Plaintiffs first stated the claim for damages
was based on flooding, yet later filed a claim due to vandalism,
and then again reverted back to filing a claim for damages due to
flooding).

Based on the factors set forth above, Plaintiffs have
not demonstrated "by clear, direct, weighty, and convincing
evidence" that Defendant acted without a reasonable basis in
continuing to investigate whether the premises were heated, which
may have caused or contributed to the ruptured water pipe.  See
Williams v. Hartford Cas. Ins. Co., 83 F. Supp. 2d 567, 572 (E.D.
Pa. 2000) (citing Klinger, 115 F.3d at 234) (holding that "if
delay is attributable to the need to investigate further or even
to simple negligence, no bad faith has occurred"); Quaciari v.
Allstate Ins. Co., 998 F. Supp. 578, 582-83 (E.D. Pa. 1998),
aff'd without opinion, 172 F.3d 860 (3d Cir. 1998) (holding that
even if all delay were attributable to the insurer, a period of
approximately thirteen months between notification of UIM claim
and resolution of the claim through arbitration would not,
without more, be sufficient to establish bad faith).

2.   Knowledge or Reckless Disregard of a Reasonable
     Basis

Since Plaintiffs cannot demonstrate that Defendant
lacked a reasonable basis in conducting the ongoing

-24-

investigation, the Court need not reach the second prong of §
8371, whether Defendant knew or recklessly disregarded the
reasonable basis.

## IV. <u>CONCLUSION</u>

For the reasons set forth above, summary judgment will
be granted in favor of Defendant.

An appropriate order follows.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

3039 B STREET ASSOCIATES,  :  CIVIL ACTION
INC., et al.,             :  NO. 09-1079
                          :
        Plaintiffs,       :
                          :
    v.                    :
                          :
LEXINGTON INSURANCE COMPANY,  :
                          :
        Defendant.        :

## O R D E R

**AND NOW**, this **3rd** day of **May, 2010,** it is hereby

**ORDERED**, for the reasons stated in the accompanying memorandum,

Defendant's motion for summary judgment (doc. no. 33) is **GRANTED**.


**IT IS FURTHER ORDERED** that, all claims having been

dismissed, this case shall be marked **CLOSED**.


**AND IT IS SO ORDERED.**


     S/Eduardo C. Robreno
     **EDUARDO C. ROBRENO, J.**